UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 20-CV-1220 (EK) (RER)

———————————

ANDREW PROKOS,

Plaintiff,

VERSUS

IQ HOMES & CO. INC.,

Defendant.

———————————

**REPORT & RECOMMENDATION**

———————————

**February 11, 2021**

**To the Honorable Erik R. Komitee
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

    Plaintiff Andrew Prokos ("Plaintiff" or "Prokos") brings this action alleging that Defendant IQ Homes & Co. Inc. ("Defendant" or "IQ Homes") reproduced and published his copyrighted photograph without authorization in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and intentionally removed and/or altered copyright management information in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202.[1] (Dkt. No. 1 ("Compl.") ¶¶ 1, 25). Your Honor has referred to me Prokos's Motion for Default Judgment. (Order dated 8/20/2020). For the reasons which follow, I respectfully recommend that the Motion for Default

---

[1] Prokos also named Defendant Owen Olivier ("Olivier") in his Complaint. However, Prokos voluntarily dismissed the claims against Olivier without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Dkt. No. 17). Despite listing anonymous defendants in the Motion for Default Judgment, Prokos has not identified or served any defendants other than IQ Homes and Olivier. Therefore, I respectfully recommend the anonymous defendants be dismissed from the case without prejudice. *See, e.g.*, *Gustavia Home, LLC v. White,* No. 16-CV-06926 (CBA) (RER), 2017 WL 6403071, at *1 (E.D.N.Y. Apr. 28, 2017), *R & R adopted by* 2017 WL 6403858 (Dec. 14, 2017); *Toliver v. Doc. Warden Grvc*, No. 10 Civ. 0822 (RJS) (JCF), 2013 U.S. Dist. LEXIS 99410, at *52 (S.D.N.Y. Jan. 25, 2013) (citing FED. R. CIV. P. 4(m)), *R & R adopted sub nom Toliver v. N.Y.C. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 98818 (Jul. 8, 2013).

1

Judgment be GRANTED. I respectfully recommend awarding statutory damages in the amount of $20,000, attorney's fees in the amount of $3,935.50, and $440 in costs.

## BACKGROUND

As required by Federal Rule of Civil Procedure 55, the following facts are accepted as true:

Prokos is a professional photographer who sells and licenses his photographs and photography services. (Compl. ¶¶ 4, 9; Dkt. No. 20 ("Prokos Decl.") ¶ 2). He "promote[s] [his] photographs through [his] website." (Prokos Decl. ¶ 4). Prokos photographed a brownstone building in Harlem in 2013 ("the Photograph") and registered the Photograph with the United States Copyright Office that same year as part of a collection of works from 2012–2013.[2] (Compl. ¶ 10; Dkt. No 20-1 ("Ex. A")).

IQ Homes operates a real estate brokerage. (Compl. ¶ 11). It uses a website (www.iqhomes.nyc) ("the Website") to promote and advertise its services.[3] (*Id.*; Dkt. No. 19 ("Pl.'s Mem.") at 6). Prokos never authorized IQ Homes to use the Photograph for this or any purpose. (Compl. ¶ 13). But in October 2018 he noticed a virtually identical image on the Website. (Prokos Decl. ¶ 5; Pl's Mem. at 6; Compl. ¶ 15). In November 2018 and January 2019, Prokos sent letters notifying IQ Homes of its infringement on his copyright. (Dkt. No. 21 ("Steger Decl.") ¶¶ 2–3). He mailed the first letter to the address listed on the Website.[4] (*Id.* ¶ 2). That letter was returned with the notation "not deliverable as addresses [sic] unable to forward." (*Id.*). Prokos mailed the same letter to the address listed with the New York Secretary of State ("Secretary of State").[5] (*Id.* ¶ 3). Again, the letter was returned with the notation "not deliverable as addresses [sic] unable to forward." (*Id.*).

Prokos then brought this suit to enforce his rights under the Copyright Act and DMCA. (*See generally* Compl.). He served the Secretary of State with the Summons and Complaint on behalf of IQ Homes pursuant to New York law. (Steger Decl. ¶ 7). Through an investigation, Prokos identified an address in Richmond Hill, New York associated with Olivier, alleged owner of IQ Homes. (*Id.* ¶ 8). He sent a letter notification of this suit to that address. (*Id.*). IQ Homes failed to answer the Complaint, or otherwise participate in the litigation before this Court. The Clerk of Court entered default, (Dkt. No. 12), and Prokos subsequently moved for entry of default judgment, (Dkt. No. 18). Your Honor

---

[2] In his declaration, Prokos states that he created the Photograph in 2000. (Prokos Decl. ¶ 3). He does not provide the date that the image was first published.

[3] The Court notes that the Website is no longer active. *See Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y. 2016) ("A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." (citation and quotation marks omitted)).

[4] 211 East 43rd Street, New York, NY 10017.

[5] The address to which Prokos mailed the second letter—285 Jefferson Avenue, Suite 1F, Brooklyn, NY 11216—remains the address listed on the Secretary of State's website. This Court may take judicial notice of the information available on a Secretary of State's website because it is readily available and its accuracy "cannot be reasonably questioned." FED. R. EVID. 201(b)(2); *see also Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB), 2019 U.S. Dist. LEXIS 14239 at *14 (E.D.N.Y. Jan. 28, 2019) (citing *J&J Sports Prods., Inc. v. La Parranda Mexicana Bar & Resuarante Co.*, No. 17-CV-4171, 2018 U.S. Dist. LEXIS 199659, at *1 n. 3 (E.D.N.Y. Apr. 9, 2018)).

referred the Motion to me for a report and recommendation. (Order dated 8/20/2020).

## DISCUSSION

### I. Default Judgment

Entry of default judgment is a two-step process. *See* FED. R. CIV. P. 55; *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)), *adhered to in relevant part on reconsideration*, 2020 WL 5350541 (Sept. 4, 2020). After the clerk of court enters a party's default under Rule 55(a), the non-defaulting party must apply to the court for entry of default judgment. FED. R. CIV. P. 55(b)(2). The court then proceeds with analysis under Rule 55(b). *Id.*

"[T]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC) (PK), 2020 WL 1233943, at *2 (E.D.N.Y. Mar. 13, 2020); *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999). When a defendant defaults, courts consider it an admission of all well-pleaded allegations against them. *Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 85 (E.D.N.Y. 2010) (collecting cases). Therefore, well-pleaded allegations in the complaint as to liability are deemed true. *Id.* However, "the Court must review the complaint to determine whether plaintiff has stated a valid claim for relief." *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 544 (S.D.N.Y. 2015) (collecting cases).

### II. Liability

#### A. IQ Homes is Liable for Copyright Infringement

To prove a defendant's liability for copyright infringement, the plaintiff must demonstrate that (1) he owned a valid copyright in the subject work and (2) the defendant infringed on that copyright. *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005) (citation omitted); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108–109 (2d Cir. 2001).

These requirements are satisfied here. Prokos is the author of the Photograph. (Compl. ¶ 10). He submits the Certificate of Registration for "Collective Photographs of Andrew K. Prokos, 1/2012-3/2013" which was filed with the Copyright Office. (Dkt. No. 20-1 ("Ex. A")). The Certificate names Prokos as the author of the collection and as the copyright claimant. (*Id.*). I therefore find that Prokos owns a valid copyright in the Photograph under copyright registration number VAu-1-133-407 and has established ownership of the copyright for the Photograph. *See, e.g.*, *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019), ("in the context of a default judgment a timely certificate [of registration] is sufficient to establish validity"), *R & R adopted by* 2019 WL 291145 (Jan. 23, 2019); *Yurman*, 262 F.3d at 109 ("there is a statutory presumption that . . . [registered] copyrights are valid."); *c.f. CJ Prod. LLC v. Concord Toys Int'l Inc.*, No. 10-CV-5712 (ENV) (JO), 2011 WL 178610, at *3 (E.D.N.Y. Jan. 19, 2011) ("If the certificate of registration is not obtained within five years of first publication, the work is not entitled to the statutory presumption of validity and the 'evidentiary weight to be accorded the certificate . . . shall

3

be within the discretion of the court.'" (quoting 17 U.S.C. § 410(c))).

To prove that the defendant infringed on a valid copyright, the owner must allege that the defendant violated "the exclusive rights provided to a copyright owner under 17 U.S.C. § 106 and must meet a minimal burden to establish the work is original." *Dermansky*, 2020 WL 1233943, at *3 (quoting *Korzeniewski*, 2019 WL 312149, at *6). Originality means that the work was "independently created by its author, . . . not copied from pre-existing works, and . . . comes from the exercise of the creative powers of the author's mind." *Id.* (quotations omitted). "Photographs are often found to be original works." *Korzeniewski*, 2019 WL 312149, at *6. "The necessary originality for a photograph may be founded upon, among other things, the photographer's choice of subject matter, angle of photograph, lighting, . . . and the area in which the pictures are taken." *Dermansky*, 2020 WL 1233943, at *3 (quoting *Sheldon v. Plot Com.*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016), *R & R adopted by* 2016 WL 5107058 (Sept. 19, 2016)).

IQ Homes copied and publicly displayed an image virtually identical to the Photograph on its website without authorization from Prokos. (Compl. ¶¶ 12–15; Prokos Decl. ¶ 5). This is sufficient to establish that IQ Homes violated Prokos's exclusive rights as the copyright owner. *See, e.g.*, *Korzeniewski*, 2019 WL 312149, at *6 (colleting cases) (finding infringement where "[defendant] did not own any rights to the Image, reproduced and displayed it, and . . . [plaintiff] "did not consent to authorize, permit, or allow in any manner the use of the Image.").

The Court notes that the image on the Website appears to be a version of the Photograph cropped from the bottom. The image "uses the same elements, composition, colors, arrangement, subject, lighting, angle, and overall appearance" as the Photograph. (Compl. ¶ 19). And the "[P]hotograph is an original photograph composed by Mr. Prokos." (*Id.* ¶ 10). Therefore, I find that the Photograph is an original work and meets the originality requirement. *See Korzeniewski*, 2019 WL 312149, at *6 (finding originality where plaintiff asserted that "he is the sole creator of the Image, which is original and unique." (quotation marks omitted)); *Pasatieri v. Starline Prods., Inc.*, No. 18-CV-4688 (PKC) (VMS), 2020 WL 207352, at *3 (E.D.N.Y. Jan. 14, 2020) ("The originality of the Photograph can be inferred from Plaintiff's claim to be the author of the Photograph, as well as his allegations about elements unique to the [P]hotograph").

Accordingly, Prokos has adequately alleged that IQ Homes is liable for copyright infringement under § 106 of the Copyright Act.

B.  IQ Homes is Liable Under the DMCA

Under the DMCA, a plaintiff "need only allege (1) the existence of Copyright [m]anagement [i]nformation on the work in question; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Dermansky*, 2020 WL 1233943, at *3 (quoting *Sheldon*, 2016 WL 5107072, at *13). Copyright management information includes "identifying information of the work, author, or copyright owner . . . and identifying numbers or symbols referring to such information." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (citing 17 U.S.C. § 1202(c)).

Prokos provided a screenshot of the Photograph that contained his name or watermark—PROKOS in a square—on the

4

bottom left corner as it appeared on his website. (Compl. ¶ 10; Prokos Decl. ¶ 4). "[He] do[es] not display [his] photographs online without [his] name or watermark." (Prokos Decl. ¶ 4). He also provided a screenshot of the image that IQ Homes posted on the Website which appears to be identical to the Photograph except that a portion from the bottom of the image—that which contained "Prokos"—was omitted. (Compl. ¶ 15). Prokos further alleges that IQ Homes "distribut[ed] and publicly display[ed] the material, knowing that copyright management information had been removed or altered without authority." (*Id.* ¶ 25). Taken as true, these allegations establish liability under § 1202(b) of the DMCA. *See, e.g.*, *Dermansky*, 2020 WL 1233943, at *3 (Mar. 13, 2020) (citing *Riley v. Plot Com.*, No. 15 Civ. 05118 (PAE) (BCM), 2016 U.S. Dist. LEXIS 152154, at *16 (S.D.N.Y. Oct. 31, 2016), *R & R adopted by* 2016 U.S. Dist. LEXIS 1600884 (Nov. 21, 2016)); *Sheldon*, 2016 WL 5107072, at *13 (finding that Copyright management information on an original photograph "had to have been deliberately removed since it was missing from the reproductions of the Photograph.").

Accordingly, Prokos has adequately alleged that IQ Homes is liable for removal and/or alteration of copyright management information under the DMCA.

**III.   Damages**

In contrast to allegations relating to liability, allegations as to damages are not deemed admitted. *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Prokos bears the burden to establish entitlement to recovery. *See id.* (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The Court may hold an evidentiary hearing to determine damages.

FED. R. CIV. P. 55(b)(2). However, "it [is] not necessary . . . to hold a hearing, as long as [the Court] ensure[s] that there [is] a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). In determining damages, the Court may rely on "detailed affidavits and documentary evidence," and the Court's personal knowledge of the record. *Id.*

Prokos seeks damages in the amount of $38,395.50, consisting of $30,000 in statutory damages under the Copyright Act, $2,500 in statutory damages under the DMCA, $5,420.50 in attorneys' fees, and $475.00 in costs. (Pl.'s Mem. at 7).

A.   Statutory Damages

Under the Copyright Act, a copyright infringer may be held liable for either statutory damages or actual damages. 17 U.S.C. § 504(a). Statutory damages can range from $750 to $30,000 "as the court considers just." *Id.* § 504(c)(1). Where the copyright owner proves that the infringement was willful, the Court can award statutory damages up to $150,00. *Id.* § 504(c)(2).

"District courts 'enjoy wide discretion . . . in setting the amount of statutory damages.'" *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010) (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986)). To determine a reasonable amount, the Court may consider: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Id.* (citing *N.A.S. Impor. Corp. v. Chenson Enters., Inc.*, 968

F.2d 250, 252–53 (2d Cir.1992)). Courts in this Circuit reserve the maximum statutory damages for cases involving "complex and substantial copyrighted works." *Sadowski v. Roser Commc'ns Network, Inc.*, No. 19-CV-592, 2020 WL 360815, at *2 (N.D.N.Y. Jan. 22, 2020) (collecting cases from this District and the Southern District of New York). Awards of $30,000 generally require "evidence of willfulness and allegations of actual awareness on the part of the defendants of their infringing activity; there is usually at least one cease-and-desist letter sent to the defendant, and, frequently, requests for injunctive relief." *Wexler v. Synergy Prep, Inc.*, No. 20-CV-2672 (CBA) (SMG), 2021 WL 260635, at *4 (E.D.N.Y. Jan. 3, 2021) (quoting *Dermansky*, 2020 WL 1233943, at *5 (collecting cases)), *R & R adopted by* 2021 WL 260101 (Jan. 26, 2021).

Because IQ Homes defaulted, Prokos cannot obtain evidence as to the infringer's state of mind and profits. *See Prokos v. Mont Morris, LLC*, No. 20-CV-2323 (PKC), 2020 WL 5819904, at *2 (S.D.N.Y. Sept. 30, 2020). Default by the infringer also "weighs against it when considering its cooperation, conduct and attitude." *Id.* Prokos asserts that the "acts of copyright infringement . . . were willful, intentional and malicious," (Compl. ¶ 23), but he does not provide further support for this conclusion. IQ Homes is a real estate brokerage "and therefore not in the publishing industry, making its infringement less well-informed and 'blameworthy.'" *Wexler*, 2021 WL 260635, at *4 (quoting *Mantel v. Smash.com Inc.*, No. 19-CV-6113 (FPG), 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019)).

Prokos tried twice to mail a letter to IQ Homes notifying it of the infringement. (Steger Decl. ¶¶ 2–3). He sent the letter first to the address listed on the Website and then to the address on file with the Secretary of State.[6] (*Id.*). Both letters were returned. (*Id.*). More than one year later, Prokos filed suit requesting damages and injunctive relief. (Compl. at 6–7).

Although Prokos complains of only one instance of infringement, he asserts that "[his] works have been highly sought after by various publications and advertising firms for editorial and commercial use." (Pl.'s Mem. at 7). And that "[he] invests heavily in the production of his photographs, as well as in the marketing of his photographs to publications, advertising firms, and real estate brokerages." (*Id.*). This is how he makes a living. (Prokos Decl. ¶ 2). Prokos submits licensing fees he previously negotiated to support his request for statutory damages. For website and print usage of a photograph described as "View of the Empire State Building at Dusk," he received $19,950 in 2009. (Dkt. No. 20-2; Prokos Decl. ¶ 7). For website usage of another high-resolution stock photo license he received $10,950 in 2011, (Dkt. No. 20-3; Prokos Decl. ¶ 8); he did not provide an image of this photograph. And for website usage of an image of the New York City skyline to be used in an advertisement, he received $20,167 in 2017. (Dkt. 20-3; Prokos Decl. ¶ 9). Prokos does not provide an invoice for more recent licensing agreements. He also does not provide any previous licensing agreement for the Photograph, noting that "[he has] had difficulty licensing the Subject Photograph because it has been frequently infringed by

---

[6] Corporations have an obligation to update the Secretary of State with a new address. *See, e.g.*, *Trustees of Local 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 275–76 (E.D.N.Y. 2010); *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 CIV. 1674 (RJS), 2013 WL 5405699, at *5 (S.D.N.Y. Sept. 23, 2013).

6

individuals and companies in the real estate business." (Prokos Decl. ¶ 6).

"[A] professional photographer has a right to earn his living without going to court to redress other parties' casual abuse of the fruits of his labor, and thus deterrence is a substantial concern." *Sadowski*, 2020 WL 360815, at *3 (citing *Bryant*, 603 F.3d at 144). Given IQ Homes's state of mind as reflected by its default, its infringing activity, Prokos's lost revenue based on his sales invoices submitted in connection with the motion, as well as the need to deter other prospective infringers, I find that statutory damages of $17,500 are appropriate. *See generally Mont Morris*, 2020 WL 5819904, *2 (awarding Prokos $20,000 in statutory damages in similar circumstances).

Under the DMCA, statutory damages range from $2,500 to $25,000 per violation involving the integrity of copyright management information. 17 U.S.C. § 1203(c)(3)(B). In light of the default and apparent efforts to conceal Prokos's ownership by removing his identifying name or watermark, I find that statutory damages of $2,500 are appropriate.[7]

## IV.   Attorney's Fees and Costs

The Copyright Act provides that a court may award full costs, including reasonable attorney's fees.[8] 17 U.S.C. § 505. Prokos seeks attorney's fees of $5,420.50 and costs of $475. (Pl.'s Mem. at 22; Steger Decl. ¶¶ 14–15).

### A.   Attorney's Fees

The Court has broad discretion to award attorney's fees. *See Matthew Bender & Co., Inc. v. W. Pub. Co.*, 240 F.3d 116, 121 (2d Cir. 2001). In this Circuit, courts consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Broad. Music, Inc. v. The Living Room Steak House, Inc.*, No. 14-CV-6298 (FB) (RER), 2016 WL 756567, at *8 (E.D.N.Y. Feb. 26, 2016) (quoting *Blanch v. Koons*, 485 F. Supp. 2d 516, 517 (S.D.N.Y. 2007)), *R & R adopted by* 2016 WL 1056609 (Mar. 17, 2016).

While this motion for default judgment was pending, IQ Homes dissolved as a corporation.[9] Nevertheless, under New York Business Law § 1006, "a claim that accrues prior to a corporation's dissolution may be interposed against the dissolved corporation." *Town of Oyster Bay v. Occidental Chem. Corp.*, 987 F. Supp. 182, 210 (E.D.N.Y. 1997) (citing *Indep. Inv. Prot. League v. Time, Inc.*, 50 N.Y.2d 259, 262–263 (1980)). In light of IQ Homes's default and this Court's finding that Prokos brought a meritorious claim, it is appropriate to award reasonable attorney's fees and costs. *See Dermansky*, 2020 WL 1233943, at *7 (citing *Reilly v. Plot Com.*, No. 15-CV-05118 (PAE) (BCM), 2016 U.S. Dist. LEXIS 152154, at *36 (S.D.N.Y. Oct. 31, 2016), *R & R adopted by* 2016 U.S. Dist. LEXIS 160884 (Nov. 21, 2016)).

---

[7] Prokos concludes that this act was "willful, reckless, and/or with knowledge." (Compl. ¶ 27).

[8] The DMCA also provides for an award of reasonable attorney's fees and costs. 17 U.S.C. § 1203(b)(4)–(5).

[9] IQ Homes was dissolved on November 9, 2020. The Court may take judicial notice of the status of IQ Homes as reported on the Secretary of State's Website. *See* FED. R. EVID. 201(b)(2); *Feng Lin*, 2019 U.S. Dist. LEXIS 14239, at *14.

7

Prokos bears the burden to provide documentation of the reasonable rate to be awarded and reasonable hours expended by his counsel. *See Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 201 (S.D.N.Y. 2016). The Court then considers the reasonable fee award as the product of a reasonable hourly rate and reasonable hours expended on the litigation. *We Shall Overcome Found. v. Richmond Org., Inc.*, 330 F. Supp. 3d 960, 970 (S.D.N.Y. 2018) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

### i. Reasonable Rate

A reasonable attorney's rate is the amount that "a reasonable, paying client would be willing to pay." *We Shall Overcome*, 330 F. Supp. 3d at 970 (quoting *Simmons v. N.Y.C Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). The Second Circuit has adopted the forum rule under which district courts may generally consider as reasonable the prevailing hourly rates in the district in which they sit. *Realsongs*, 749 F. Supp. 2d at 88 (citing *Polk v. N.Y. Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983)). In this District, reasonable hourly rates range from "$300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Dermansky*, 2020 WL 1233943, at *7 (quoting *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at * 4 (E.D.N.Y. Jan. 29, 2020) (collecting cases)).

Counsel for Prokos, Michael Douglas Steger ("Steger"), began practicing law in 1993, and for the past ten years has focused primarily on intellectual property law. (Steger Decl. ¶ 13). He is the co-chair of the American Bar Association's Intellectual Property Litigation Committee and a member of the New York City Bar Trademark and Unfair Competition Committee. (*Id.*). He previously served on the Copyright and Literary Property Committee. (*Id.*). Steger states simply that "[m]y hourly rate for this matter is $485," (*Id.*), but provides no additional support to explain why a rate beyond the range typically awarded in this District is reasonable. I therefore find this rate excessive. I respectfully recommend $400 as a reasonable rate. *See Design Pics Inc. v. PBH Network, Inc.*, No. 20-CV-1096 (MKB) (JO), 2020 WL 8413512, at *6 (E.D.N.Y. Oct. 27, 2020) (awarding hourly rate of $400), *R & R adopted in relevant part by* 2021 WL 74088 (Jan. 8, 2021); *but c.f. Prokos v. Grossman*, No. 19-CV-4028 (BMC), 2020 WL 729761, at *3 (E.D.N.Y. Feb. 13, 2020) (awarding Steger's requested rate of $485 because "I am not going to nickel and dime the rate in a case where defendants have failed to appear.").

Steger requests a rate of $100 for his paralegal, (Steger Decl. ¶ 14), who performed duties such as drafting the table of contents and preparing exhibits, drafting the declaration for default, and drafting the application for entry of default, (Dkt. No. 21-4 ("Ex. H")). I find this rate reasonable.

### ii. Reasonable Hours Expended

The Court must next determine the reasonableness of hours expended based on the Court's experience, knowledge of the case, and evidence and arguments presented. *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 562 (S.D.N.Y. 2018) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). The Court may make "an across-the-board fee reduction" if "counsel relies on vague or excessive entries or block billing practices." *Zuffa, LLC v. S. Beach Saloon, Inc.*, No. 15-CV-06355 (ADS) (AKT), 2019 WL 1322620, at *8 (E.D.N.Y. Mar. 6, 2019) (collecting cases), *R & R adopted by* 2019 WL 1317568 (Mar. 22, 2019); *Hollander*,

8

291 F. Supp. 3d at 562. Block billing, or "the aggregation of a number of tasks in a single time entry. . . . interferes with the ability of a court to evaluate the reasonableness of attorney hours." *Hollander*, 291 F. Supp. 3d at 563 (citations omitted); *c.f. We Shall Overcome*, 330 F. Supp. 3d at 973 (declining to make any reductions for block billing where it did not interfere with the court's ability to review the reasonableness of the work performed). The Court may also reduce attorney time billed for clerical tasks which should be considered an overhead expense. *See Bridges v. Eastman Kodak Co.*, No. 91 CIV. 7985 (RLC), 1996 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996), *aff'd*, 102 F.3d 56 (2d Cir. 1996) (quoting *Soc'y for Good Will to Retarded Children v. Cuomo*, 574 F. Supp. 994, 999 (E.D.N.Y. 1983), *vacated on other grounds*, 737 F.2d 1253 (2d Cir. 1984)).

Prokos asks the Court to reimburse him for the cost of work by his counsel, including 9.3 hours by attorney Steger and 9.1 hours by Steger's paralegal. (Steger Decl. ¶ 14). However, there are several deficiencies throughout Steger's billing records. Nearly every billing entry includes multiple tasks performed. (Ex. H). Some of these block billing entries intermingle substantive tasks with clerical tasks such as "research, draft, revise and file complaint," and "revise and file application for default." (*Id.* at 2–3). The Court therefore cannot discern whether a reasonable amount of time was spent on each task. Moreover, filing documents is a clerical task that is not compensable at an experienced attorney's billing rate. *E.g.*, *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (listing clerical tasks to include "faxing documents, preparing duplicates, serving papers on defendants, and filing documents."). Lastly,

"given the boilerplate nature of many of the filings in this case and the fact that little if anything distinguishes this case from the many similar, routine copyright cases litigated to default judgments in this district every year, the amount of time Steger billed to this case seems unreasonably high." *Design Pics*, 2020 WL 8413512, at *7 (reducing plaintiff's request of 9.2 hours for Steger's time and 9 hours for paralegal time in a similar case); *c.f. Mont Morris*, 2020 WL 5819904, at *2 (awarding Prokos fees for 7.8 hours of attorney time and 8.9 hours of paralegal time).

In light of the deficiencies noted above, and the overall reasonableness of the hours expended, I find that a 15% reduction is reasonable. *See e.g.*, *Miroglio*, 629 F. Supp. 2d at 314 (15% reduction); *Design Pics*, 2020 WL 8413512, at *7 (20% reduction); *Telebrands Corp. v. HM Imp. USA Corp.*, No. 09-CV-3492 (ENV) (RLM), 2012 WL 3930405, at *13 (E.D.N.Y. July 26, 2012) (collecting cases) (25% reduction), *R & R adopted by* 2012 WL 3957188 (Sept. 10, 2012). Accordingly, I respectfully recommend that Plaintiff be awarded $3,935.50 in attorney's fees.[10]

### B. Costs

Prokos alleges $475 in costs. (Steger Decl. ¶ 15). He does not provide supplemental material such as receipts or invoices to substantiate the request. But the Court may take judicial notice of the District's filing fee. *See, e.g.*, *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 (KAM) (SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (collecting cases). Therefore, I find it appropriate to take judicial notice of this District's $400 filing fee. (*See*

---

[10] $400 ✕ (9.3 ✕ .85) hours = $3,162. $100 ✕ (9.1 ✕ .85) hours = $773.50

9

Dkt. No. 1 Entry dated 3/5/2020 noting "filing fee $400, receipt number ANYEDC-12493812.").

Prokos included an affidavit of service, which indicates that the cost to serve the Secretary of State was $40.[11] (Dkt. No. 9). There is a billing entry for service in the amount of $75 on May 15, 2020, which roughly aligns with the date on which Prokos served the Secretary of State.[12] (Ex. H; Dkt. No. 9). However, no receipt, invoice, or other documentation indicates that the cost to serve IQ Homes was $75. Therefore, I find it appropriate to award $40 in service costs. *See Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773 (FB) (SJB), 2019 WL 1130729, at *14 (E.D.N.Y. Feb. 11, 2019), *R & R adopted by* 2019 WL 1128356 (Mar. 12, 2019); *J & J Sports Prods., Inc. v. Perez*, No. 06-CV-480 (JG) (SMG), 2008 U.S. Dist. LEXIS 118445, at *5 (E.D.N.Y. Mar. 5, 2008), *R & R adopted by* 2008 U.S. Dist. LEXIS 25321 (Mar. 31, 2008). I respectfully recommend that Plaintiff be awarded $440 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motion for default judgment be granted and that the Court award Prokos $20,000 in statutory damages, $3,935.50 in attorney's fees, and $440 in costs.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Eric R. Komitee within fourteen (14) days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: February 11, 2021
        Brooklyn, NY

---

[11] The New York Secretary of State charges a fee of $40 for service on a corporation. *See* https://www.dos.ny.gov/corps/faq_service_of_process.page.asp (last visited Feb. 11, 2021).

[12] The Secretary of State was served on May 12, 2020. (Dkt. No. 9).

10